## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

SARAH DAWN COFFEY,

      Plaintiff,

v.                                CIVIL ACTION NO. 3:20-cv-00568

KILOLO KIJAKAZI,[1] Acting
Commissioner of Social Security,

      Defendant.

### PROPOSED FINDINGS & RECOMMENDATION

Plaintiff Sarah Dawn Coffey ("Claimant") seeks review of the final decision of the Commissioner of Social Security (the "Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401–33. (ECF No. 2.) By standing order entered on January 4, 2016, and filed in this case on September 1, 2020, this matter was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (ECF No. 4.) Presently pending before this Court are Claimant's Brief in Support of Judgment on the Pleadings (ECF No. 15) and the Commissioner's Brief in Support of Defendant's Decision (ECF No. 18).

---

[1] Kilolo Kijakazi is now the Acting Commissioner of Social Security and is automatically substituted as a party pursuant to Federal Rule of Civil Procedure 25(d). *See also* 42 U.S.C. § 405(g) (stating that action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **DENY** Claimant's request to reverse the Commissioner's decision (ECF No. 15), **GRANT** the Commissioner's request to affirm her decision (ECF No. 18), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this action from the Court's docket.

## I.     BACKGROUND

### A. Information about Claimant and Procedural History of Claim

Claimant was 34 years old at the time of her alleged disability onset date and 36 years old on the date of the decision by the Administrative Law Judge ("ALJ"). (*See* Tr. at 218.)[2] She completed one year of college and vocational training. (*Id.* at 223.) Most recently, she worked as a medical assistant, and she has also been employed as a maid. (*Id.* at 224.) Claimant alleges that she became disabled on October 14, 2016, due to a back injury, a "[m]issing left deltoid," "depression-bipolar," anxiety, "several back surgeries," back pain, and ankylosing spondylitis. (*Id.* at 218, 222.)

Claimant protectively filed her application for benefits on March 22, 2017. (*Id.* at 12, 190–91.) Her claim was initially denied on August 16, 2017, and again upon reconsideration on November 2, 2017. (*Id.* at 108–18, 120–26.) Thereafter, on December 28, 2017, Claimant filed a written request for hearing. (*Id.* at 127–28.) An administrative hearing was held before an ALJ on June 24, 2019, in Charleston, West Virginia, with the ALJ appearing from Huntington, West Virginia. (*Id.* at 34–74.) On August 5, 2019, the ALJ rendered an unfavorable decision. (*Id.* at 9–33.) Claimant then sought review of the ALJ's decision by the Appeals Council on October 3, 2019. (*Id.* at 180–89.) The Appeals

---

[2] All references to "Tr." refer to the Transcript of Proceedings filed in this action at ECF No. 12.

Council denied Claimant's request for review on July 2, 2020, and the ALJ's decision became the final decision of the Commissioner on that date. (*Id.* at 1–6.)

Claimant timely brought the present action on August 28, 2020, seeking judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g). (ECF No. 2.) The Commissioner filed an Answer (ECF No. 11) and a transcript of the administrative proceedings (ECF No. 12). Claimant subsequently filed her Brief in Support of Judgment on the Pleadings (ECF No. 15), and in response, the Commissioner filed her Brief in Support of Defendant's Decision (ECF No. 18). As such, this matter is fully briefed and ready for resolution.

### B.  Relevant Medical Evidence

The undersigned has considered all evidence of record, including the medical evidence, pertaining to Claimant's arguments and summarizes it here for the convenience of the United States District Judge.

#### 1.  Treatment for Left Shoulder Impairment

On January 21, 2013, more than three years before Claimant's alleged onset date, she presented to an orthopedic oncologist upon a referral from her primary care physician to be evaluated for "a mass over her left shoulder" that had been present "for the past 5 years." (Tr. at 387–88.) The oncologist believed that Claimant "most likely has an extra-abdominal desmoid in the left posterior shoulder," but he recommended "a radical resection of the posterior portion of the deltoid to reduce the risk of local recurrence and for definitive diagnosis" because the "musculoskeletal pathologist feels that sarcoma may be a significant concern." (*Id.* at 380.) The procedure was performed on February 15, 2013. (*Id.* at 348–51.) On March 4, 2013, the oncologist remarked that Claimant was "doing well" and prescribed "physical therapy for strengthening." (*Id.* at 322.) He noted

on September 10, 2013, that "[s]he has no evidence of local recurrence on physical exam." (*Id.* at 305.) And on June 23, 2014, he again remarked that Claimant "is doing well although she continues to complain of deficits with her shoulder including swelling [and] pain after extensive use." (*Id.* at 296.) The oncologist also stated, "She continues to have permanent deficits in the left shoulder as a result of of [sic] missing posterior belly of the deltoid." (*Id.* at 298.) Imaging of Claimant's left shoulder dated nearly a year and a half later, on October 19, 2015, was negative for both "acute bone or joint abnormality" and "degenerative change." (*Id.* at 486.) Contemporary physical examinations by her primary care physician, performed on October 14 and 27, 2015, revealed "normal range of motion in all joints." (*Id.* at 462, 464.) The administrative record lacks evidence that Claimant sought further treatment for her left shoulder, including after her alleged onset date of October 14, 2016.

## C. *Sequential Evaluation Process*

An individual unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months" is considered to be disabled and thus eligible for benefits. 42 U.S.C. § 423(d)(1)(A). The Social Security Administration has established a five-step sequential evaluation process to aid in this determination. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Lewis v. Berryhill*, 858 F.3d 858, 861 (4th Cir. 2017). The ALJ proceeds through each step until making a finding of either "disabled" or "not disabled"; if no finding is made, the analysis advances to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The ultimate burden to prove disability lies on the claimant." *Preston v. Heckler*, 769 F.2d 988, 990 n.* (4th Cir. 1985); *see Bird v. Comm'r of Soc. Sec.*, 699 F.3d

4

337, 340 (4th Cir. 2012) ("To establish eligibility for . . . benefits, a claimant must show that he became disabled before his [date last insured].").

At the first step in the sequential evaluation process, the ALJ determines whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not engaged in substantial gainful activity, the ALJ moves on to the second step.

At the second step, the ALJ considers the combined severity of the claimant's medically determinable physical and mental impairments. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The ALJ gleans this information from the available medical evidence. *See Mastro v. Apfel*, 270 F.3d 171, 177 (4th Cir. 2001). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements will result in a finding of "not disabled." 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015).

Similarly, at the third step, the ALJ determines whether the claimant's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). "A claimant is entitled to a conclusive presumption that he is impaired if he can show that his condition 'meets or equals the listed impairments.'" *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013) (quoting *Bowen v. City of New York*, 476 U.S. 467, 471 (1986)).

"If the first three steps do not lead to a conclusive determination, the ALJ then assesses the claimant's residual functional capacity" ("RFC") before proceeding to the fourth step. *Mascio*, 780 F.3d at 635; *see* 20 C.F.R. §§ 404.1520(e), 416.920(e). The

claimant's RFC reflects "her ability to perform work despite her limitations." *Patterson v. Comm'r of Soc. Sec.*, 846 F.3d 656, 659 (4th Cir. 2017); *Monroe v. Colvin*, 826 F.3d 176, 179 (4th Cir. 2016) (defining claimant's RFC as "the most the claimant can still do despite physical and mental limitations that affect his ability to work" (alterations and internal quotation marks omitted)); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The ALJ "first identif[ies] the individual's functional limitations or restrictions and assess[es] his or her work-related abilities on a function-by-function basis," then "define[s] the claimant's RFC in terms of the exertional levels of work." *Lewis*, 858 F.3d at 862.  "In determining a claimant's RFC, the ALJ must consider all of the claimant's medically determinable impairments . . . including those not labeled severe" as well as "all the claimant's symptoms, including pain, and the extent to which his symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." *Monroe*, 826 F.3d at 179 (alterations and internal quotation marks omitted); *see* 20 C.F.R. §§ 404.1545(a), 416.945(a).

When the claimant alleges a mental impairment, the first three steps of the sequential evaluation process and the RFC assessment are conducted using a "special technique" to "evaluate the severity of [the] mental impairment[]."  20 C.F.R. §§ 404.1520a(a), 416.920a(a); *see Patterson*, 846 F.3d at 659.  Considering the claimant's "pertinent symptoms, signs, and laboratory findings," the ALJ determines whether the claimant has "a medically determinable mental impairment(s)" and "rate[s] the degree of functional limitation resulting from the impairment(s)" according to certain criteria.  20 C.F.R. §§ 404.1520a(b), 416.920a(b); *see id.* §§ 404.1520a(c), 416.920a(c).  "Next, the ALJ must determine if the mental impairment is severe, and if so, whether it qualifies as a listed impairment." *Patterson*, 846 F.3d at 659; *see* 20 C.F.R. §§ 404.1520a(d),

416.920a(d). "If the mental impairment is severe but is not a listed impairment, the ALJ must assess the claimant's RFC in light of how the impairment constrains the claimant's work abilities." *Patterson*, 846 F.3d at 659.

After assessing the claimant's RFC, the ALJ at the fourth step determines whether the claimant has the RFC to perform the requirements of her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv); *Monroe*, 826 F.3d at 180. If she does not, then "the ALJ proceeds to step five." *Lewis*, 858 F.3d at 862.

The fifth and final step requires the ALJ to consider the claimant's RFC, age, education, and work experience in order to determine whether she can make an adjustment to other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). At this point, "the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that 'exists in significant numbers in the national economy.'" *Lewis*, 858 F.3d at 862 (quoting *Mascio*, 780 F.3d at 635). "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." *Id.* (quoting *Mascio*, 780 F.3d at 635). If the claimant can perform other work, the ALJ will find her "not disabled." 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If she cannot perform other work, the ALJ will find her "disabled." *Id.*

Applying the sequential evaluation process in this case, the ALJ concluded that Claimant satisfied the insured status requirements and was insured through the date of the decision. (Tr. at 14.) He further determined that Claimant had not engaged in substantial gainful activity since the alleged onset of her disability. (*Id.*) He found that Claimant's obesity, ankylosing spondylitis, degenerative disc disease, chronic pain syndrome, status post-surgery on the left deltoid, fibromyalgia, bipolar disorder, panic

disorder, and generalized anxiety disorder constituted "severe" impairments. (*Id.*) However, he found that those impairments, or a combination thereof, failed to meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 15–19.) Upon assessing Claimant's RFC, the ALJ determined that Claimant is able to perform sedentary work, except she can lift, carry, push, and pull ten pounds occasionally and less than ten pounds frequently, sit for six hours in an eight-hour workday, and stand or walk for two hours in an eight-hour workday. (*Id.* at 19.) He further found that she can climb ramps and stairs "less than occasionally" and never climb ladders, ropes, or scaffolds, occasionally stoop and kneel, and "less than occasionally" crouch and crawl. (*Id.*) He also determined that Claimant can frequently reach in all directions and use hand controls with her left arm. (*Id.*) The ALJ found that Claimant can never work at unprotected heights but may occasionally work with moving mechanical parts and operate a motor vehicle, and she can tolerate only occasional exposure to extreme cold, extreme heat, and vibration. (*Id.*) Finally, he determined that she can frequently interact with supervisors and coworkers and occasionally interact with the public and that she is "limited to simple work." (*Id.* at 19–20.)

The ALJ concluded that given the limitations imposed by the Claimant's RFC, she was unable to perform her past relevant work. (*Id.* at 26–27.) He noted that Claimant is "a younger individual" with "at least a high school education" and that "[t]ransferability of job skills [was] not material to the determination of disability." (*Id.* at 27.) Because the ALJ determined that Claimant was unable to perform the full range of sedentary work, he enlisted a vocational expert to aid in his finding that Claimant is capable of working as an eyeglass frame polisher or document preparer. (*Id.* at 27–28.) As a result, the ALJ

concluded that Claimant was not "under a disability . . . from October 14, 2016, through the date of this decision." (*Id.* at 28.)

## II.    *LEGAL STANDARD*

This Court has a narrow role in reviewing the Commissioner's final decision to deny benefits: it "must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct legal standard." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam)). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and it must be "more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). In other words, this Court "looks to [the] administrative record and asks whether it contains 'sufficient evidence' to support the agency's factual determinations." *Id.* (alteration omitted). "[T]he threshold for such evidentiary sufficiency is not high." *Id.* "In reviewing for substantial evidence, [this Court] do[es] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Johnson*, 434 F.3d at 653 (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Even if "reasonable minds [could] differ as to whether a claimant is disabled," this Court upholds the ALJ's decision if it is supported by substantial evidence. *Id.* (quoting *Craig*, 76 F.3d at 589).

## III.    *ANALYSIS*

Claimant argues that the ALJ erred by determining that she can frequently reach in all directions with her left arm and by failing to address her orthopedic oncologist's opinion about her limitations after shoulder surgery. (ECF No. 15 at 7–9.) She asks this Court to reverse the Commissioner's decision and award her benefits or to reverse the

Commissioner's decision and remand this matter to the ALJ.  (*Id.* at 9–10.)  The Commissioner responds that Claimant essentially improperly asks this Court to weigh anew the medical evidence of record related to her left shoulder impairment and that the ALJ adequately considered the orthopedic oncologist's statement in his discussion of that evidence, so any error to explicitly evaluate the statement as a medical opinion is harmless.  (ECF No. 18 at 9–13.)

## A.  RFC Assessment

Claimant's contention that the ALJ inadequately accounted for any limitations caused by her left shoulder impairment is without merit.  "In the RFC assessment, the ALJ uses all relevant evidence, medical or otherwise, to determine a claimant's 'ability to meet the physical, mental, sensory, and other requirements of work.'"  *Ladda v. Berryhill*, 749 F. App'x 166, 172 (4th Cir. 2018) (quoting 20 C.F.R. §§ 404.1545, 416.945).  This entails "identify[ing] the individual's functional limitations or restrictions and assess[ing] his or her work-related abilities on a function-by-function basis, including the functions listed in the regulations."  *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (internal quotation marks omitted).  The RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."  *Id.* "Thus, a proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion."  *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019).  Stated another way, "the ALJ must both identify evidence that supports his conclusion and 'build an accurate and logical bridge from [that] evidence to his conclusion.'"  *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) (emphasis deleted) (quoting *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016)).

Claimant argues that the ALJ inconsistently stated that her ability to reach with her left arm is limited in all directions but still found that she can reach frequently.  (ECF No. 15 at 6; *see id.* at 7.)  But her assertion fails to recognize that a limitation to frequent reaching *is* a limitation: "'frequent reaching' in an RFC context still signifies that an ALJ is instituting a limitation upon the work that a claimant may perform, as 'frequent' is a limitation against jobs that would involve 'constant' reaching." *Carter v. Saul*, No. 1:19-cv-00191, 2020 WL 1502860, at *5 (S.D.W. Va. Mar. 30, 2020); *see Jamaleddine C. v. Comm'r, Soc. Sec. Admin.*, No. SAG-18-203, 2018 WL 6344206, at *3 (D. Md. Nov. 8, 2018) ("[T]he [Social Security Administration] generally defines 'frequent' as 'occurring from one-third to two-thirds . . . of a workday,' SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983), and the [*Dictionary of Occupational Titles*] occupational definitions generally describe 'frequently' as 'exist[ing] from 1/3 to 2/3 of the time,' *see, e.g.*, U.S. Dep't of Labor, Dictionary of Occupational Titles § 556.687-030, Mold Filler (4th ed. 1991), 1991 WL 683505.").  Put simply, there is nothing inconsistent about the ALJ's RFC assessment insofar as it relates to Claimant's ability to use her left arm.

Moreover, the ALJ properly performed the RFC assessment and explained why he included the restrictions he found appropriate.  He described Claimant's treatment for her shoulder impairment, which all occurred prior to the alleged onset of her disability, and noted that Claimant still continued to have "residual pain" and "mild to moderate [swelling] after excessive use."  (Tr. at 23.)  But he remarked that Claimant "worked after the development and treatment for this condition," and her daily activities "evidence[] some use of the left arm, even if light use."  (*Id.*)  The ALJ rejected Claimant's "counsel's assertion that she essentially has no use of the left arm."  (*Id.*)  He reasoned that "the [RFC] accommodates [her shoulder impairment] by including that she should never

climb ladders, ropes, or scaffolds, her left arm reaching is limited in all directions, and her use of hand controls is limited to frequent use." (*Id.*) The undersigned **FINDS** that the ALJ's conclusions are adequately explained and supported by substantial evidence.

B.  *Treating Physician Opinion*

Claimant's assertion that the ALJ improperly ignored the opinion of the orthopedic oncologist who treated her shoulder impairment likewise fails. When determining whether a claimant is disabled, the ALJ must "evaluate and weigh medical opinions" by considering, among other factors, "(1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (per curiam); *see* 20 C.F.R. §§ 404.1527(c), 416.927(c). "[A] treating physician's opinion on the nature and severity of the claimed impairment is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). Even when a treating physician's opinion is not entitled to controlling weight, the ALJ must consider the factors enumerated above, and his discussion of the weight assigned to the opinion must reflect that he did so. *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 385 (4th Cir. 2021) ("While an ALJ is not required to set forth a detailed factor-by-factor analysis in order to discount a medical opinion from a treating physician, it must nonetheless be apparent from the ALJ's decision that he meaningfully considered *each* of the factors before deciding how much weight to give the opinion." (emphasis in original) (citing *Arakas v.*

*Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 107 n.16 (4th Cir. 2020); *Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000))).

As an initial matter, it is questionable that the ALJ had any obligation to consider the oncologist's statement in the first place, since it was made more than two years before the alleged onset of her disability.  "The ALJ . . . is not required to discuss evidence that is neither significant nor probative, and medical opinions predating the alleged onset date are of limited relevance."  *Simons v. Comm'r, Soc. Sec.*, No. RDB-17-1837, 2018 WL 3416943, at *2 (D. Md. July 13, 2018) (quoting *Baker v. Berryhill*, 720 F. App'x 352, 355 (9th Cir. 2017)) (internal quotation marks omitted), *adopted by* 2018 WL 4863629 (D. Md. Aug. 1, 2018); *see Gullace v. Astrue*, No. 1:11-cv-0755 (TSE/JFA), 2012 WL 691554, at *24 (E.D. Va. Feb. 13, 2012) (citing *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1165 (9th Cir. 2008)), *adopted by* 2012 WL 688488 (E.D. Va. Mar. 2, 2012).  *But see Cunningham v. Berryhill*, No. 5:17-cv-301-FL, 2018 WL 6731380, at *4 (E.D.N.C. Nov. 19, 2018 (requiring ALJ to consider medical opinion rendered six months prior to alleged onset date), *adopted by* 2018 WL 6729784 (E.D.N.C. Dec. 21, 2018).

However, the ALJ did in fact consider the statement at issue—even though he did not identify the oncologist by name—and he essentially accepted it by including limitations on Claimant's use of her left upper extremity in his RFC assessment.  The oncologist stated that Claimant "continues to have permanent deficits in the left shoulder as a result of of [sic] missing posterior belly of the deltoid."  (Tr. at 298.)  The ALJ essentially paraphrased this statement in his RFC assessment, writing, "While the tumor removal was noted to be a life-changing event for the claimant, there is no objective evidence of reoccurrence, although the residual pain from surgery and treatment does have some limiting effects on the claimant's manipulative abilities."  (*Id.* at 23.)  The ALJ

13

then summarized the objective medical findings and Claimant's daily activities before setting out the functional limitations he found were necessitated by the shoulder impairment. (*Id.*) Notably, the oncologist did not opine that Claimant required any specific restrictions on the use of her left upper extremity, nor does his statement suggest that additional restrictions beyond those the ALJ discussed in the RFC assessment are warranted. It was Claimant's counsel, not the oncologist, who asserted that Claimant "essentially has no use of the left arm." (*Id.*) The ALJ explained that he rejected this contention, and in any event, it is not a medical opinion entitled to any weight. 20 C.F.R. § 404.1527(a)(1) ("Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s) . . . .); *see id.* § 404.1502(a) (defining "acceptable medical source"). The ALJ's thorough discussion of the medical evidence of record related to Claimant's shoulder impairment reflects that he considered the statement at issue against each of the requisite factors for evaluating medical opinions. The undersigned **FINDS** no error.

## *IV.    CONCLUSION*

For the foregoing reasons, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **DENY** Claimant's request to reverse the Commissioner's decision (ECF No. 15), **GRANT** the Commissioner's request to affirm her decision (ECF No. 18), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this action from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED** and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b), the parties shall have fourteen (14) days from the

14

date of the filing of this Proposed Findings and Recommendation to file with the Clerk of this Court specific written objections identifying the portions of the Proposed Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause shown. Copies of any objections shall be served on opposing parties and provided to Judge Chambers.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Fourth Circuit Court of Appeals. 28 U.S.C. § 636(b)(1); *see Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984).

The Clerk is **DIRECTED** to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

ENTER: July 29, 2021

Dwane L. Tinsley
United States Magistrate Judge